**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF KENTUCKY**
**CENTRAL DIVISION**
**LEXINGTON**

**CIVIL ACTION NO. 08-9-JBC**

**SHARON M. STUTLER,**                                                    **PLAINTIFF,**

**V.**                          **MEMORANDUM OPINION AND ORDER**

**UNUM LIFE INSURANCE COMPANY**
**OF AMERICA,**                                                    **DEFENDANT.**

**\* \* \* \* \* \* \* \* \* \***

This matter is before the court on the plaintiff's motion to reverse an

administrative decision (R. 11).  The court, having reviewed the record and being

otherwise sufficiently advised, will deny the motion.

**I. Factual Background**

Sharon Stutler is a sixty-one-year-old female who completed high school and

one year of college.  AR 437.  She worked as a plant manager at Trim Masters, Inc.

for more than five years.  AR 437.  In that position she was responsible for the

plant's safety, quality control, cost reduction, production, employee relations,

budgeting, supervision, training, and planning.  AR 27.  Prior to that job, Stutler

was a materials manager for ten years.  AR 437.  In total, Stutler worked at Trim

Masters from May 4, 1992, until April 7, 2005.  AR 5.  After leaving in April 2005,

she received short-term-disability benefits through her employer until October 8,

2005.  AR 10.

Stutler participated in her employer's long-term-disability ("LTD") plan,

funded by a group insurance policy issued by Unum Life Insurance Company of America ("Unum").  The Plan provides for 12 months of benefits if you are determined disabled under an "own occupation" definition, followed by benefits to age 65 if you are determined disabled under an "any gainful occupation" definition. R. 16, at 4; *see* LTD Plan, at 14, AR LTD-BEN-1.  The Plan defines "gainful occupation" as "an occupation that is or can be expected to provide you with an income within 12 months of your return to work" as long as that income exceeds an amount as defined in the plan.  After the initial 12 months of benefits, you are disabled according to the Plan definition only if Unum determines that, due to the same sickness or injury, you are unable to perform the duties of any gainful occupation for which you are reasonably fitted by education, training or experience. LTD Plan, at 14, AR LTD-BEN-1.

### A. The Plaintiff's Initial Disability and Medical Exams

In September 2005, Stutler submitted an application for disability benefits under the Plan stating that she had osteoarthritis in both knees, that she had left-knee-replacement surgery in early 2005, and that she planned to have right-knee-replacement surgery.  AR 23.  Unum approved the claim and began paying benefits as of October 9, 2005.  AR 10, 151-53.  Unum paid LTD benefits to Stutler during the "own occupation" period through October 8, 2006, and under the "any gainful occupation" definition of the policy up until January 23, 2007.

Stutler's second knee surgery was delayed by a recurrence of superficial

2

bladder cancer.  AR 208, 310.  She was cleared for surgery in May 2006 by her urologist, who declared her "clinically disease free" and later stated that she did not have any restrictions or limitations related to the cancer.  AR 310, 443.  In July 2006, Stutler underwent right-knee-replacement surgery performed by Dr. Norman Ellingsen.  AR 307-08.  In December 2006, Dr. Ellingsen responded to a letter from Unum reviewing Stutler's disability benefits, and stated the following restrictions and limitations: "Mrs. Stutler has had a right total knee arthroplasty on July 13, 2006.  As such, she is unable to climb, stoop, bend or kneel.  She is not able to carry more than 25 pounds at a time."  AR 379.  Dr. Ellingsen also stated that Stutler had possible fibromyalgia and was being referred to a rheumatologist.  *Id.*

The plaintiff's rheumatologist, Dr. Gary R. Margolies, stated that Stutler had "diffuse arhtralgias and myalgias, probably fibromyalgia syndrome."  AR 427.  The doctor stated that a lot of Stutler's symptoms suggested fibromyalgia syndrome, but also pointed out that she was on the aromatase inhibitor which is known to cause diffuse arthralgias.  *Id.*  Testing ruled out active rheumatologic disease.  AR 432.  In January 2007, Unum Life requested information from Dr. Margolies regarding Stutler's condition.  He responded that her current diagnosis was "osteoarthritis, knees" and that he agreed with Dr. Ellingsen's restrictions which stated that Stutler was unable to climb, stoop, bend or kneel, and no lifting greater than 25 pounds.  AR 408.  Dr. Margolies met with Stutler only that one time, and later, when a reviewer called to discuss the claimant, Margolies denied having

agreed to the restrictions stated by Dr. Ellingsen.  AR 630.  Additionally, he stated, during the telephone call, that he generally does not make recommendations as to what activities a patient may be capable of and that he refers the patient for a Functional Capacity Evaluation ("FCE") if such information is requested.  *Id.*

### B. The Termination of the Plaintiff's Benefits

On January 23, 2007, Unum informed Stutler that her benefits were being terminated because she no longer met the Plan's definition of disability.  AR 453-57.  A Senior Vocational Case Manager at Unum had reviewed the plaintiff's case and performed a vocational review to determine whether she could perform other occupations.  The review resulted in the opinion that Stutler could, within the restrictions and limitations assigned by her treating physicians, Drs. Ellingsen and Margolies, perform the duties of her previous occupation – plant manager.  AR 437-40.  The assessment also found that the plaintiff could perform the following occupations: packing house supervisor, personnel manager, call center manager, and materials manager.  AR 438-39.  Because there were various occupations that Stutler could perform within her restrictions and limitations as identified by her doctors and medically supported in the record, Unum Life terminated Stutler's benefits.

### C. Medical Exams Following the Termination of Benefits

Dr. Ellingsen examined the plaintiff again on January 22, 2007.  He wrote a letter to Unum on January 26, 2007, reiterating the same limitations on the

1plaintiff's physical abilities which he had stated previously, and further stating the following:

> Mrs. Stutler relates that she has too much pain at this time to consider returning to work.  Certainly she has enough symptoms to give this consideration and I think even though she is responding well from surgery she has her fibromyalgia, which is a significantly painful condition.

AR 466.  At Stutler's evaluation, Dr. Ellingsen found that she was making some improvement with her knee, but that "she hurts in multiple places where tendons attach and even in both lower extremities including her right knee."  AR 465.  After Unum informed the plaintiff that the doctor's limitations had not changed and thus her claim was still denied, Dr. Ellingsen wrote an additional letter to Unum on February 19, 2007.  In this letter he added that Stutler was not able to stand for more than 30 minutes and needed to rest the same amount of time, that she could not lift more than 20 pounds due to the pain in her thumbs and wrists, and that her rheumatologist felt she may suffer from fibromyalgia.  AR 472.  He additionally noted that she took pain medication daily to alleviate pain and stiffness associated with her arthroplasty, and that she must be allowed to continue her pain medications every five hours and rest with heat as required.  *Id.*  Ellingsen continued by stating that Stutler's pain occurred daily and that she "awakens with pain and it worsens as the day goes on."  *Id.*  He advised that Stutler should not return to work and that she must follow the stated restrictions to prevent further injury to her knees or other joints.  *Id.*

5

D.  Administrative Appeal

Stutler appealed the termination of benefits, and a Unum Senior Clinical

Consultant, David Frank, reviewed the file.  AR 586-93.  The reviewer found that

the original restrictions and limitations, which Dr. Ellingsen stated multiple times

and which Dr. Margolies adopted, were reasonable and amounted to a sedentary

level of exertional activity.  AR 590-91.  Further, Mr. Frank did not find medical

support for Dr. Ellingsen's later conclusions stated in the February 19, 2007, letter.

Frank stated that there were no clinical-assessment findings or test results to

support a change in functional status that would result in the higher degree of

limitations.  AR 590.  Frank further stated that a Functional Capacity Evaluation

was of questionable value considering the plaintiff's specific complaints.  AR 592.

He recommended that if testing were attempted it should take into account that the

plaintiff presents a worsening of symptoms as the day progresses, which would

indicate testing would be most representative in the afternoon.  He also stated that

consideration should be given to a two-day assessment for a clinical sampling of

consistency of ability, because pain appears to be the primary limiting factor.  *Id.*

E.  Independent Reviews

The plaintiff's file was reviewed by Dr. Michael John Errico, an orthopedic

surgeon, and by Dr. Jane St. Clair, an occupational-medicine specialist.  Dr. Errico

reviewed Stutler's records and spoke on the telephone with her treating

orthopedist, Dr. Ellingsen.  AR 634.  Dr. St. Clair also reviewed the records and

spoke on the telephone with Stutler's rheumatologist, Dr. Margolies.  AR 630.

Dr. Errico stated that Stutler was unable to work only up until January 23, 2007, which was the date her benefits were terminated.  Errico found that "there was no medical evidence to support that the loss of functionality continues from that date."  AR 632-33.  He specifically stated that the plaintiff's recovery from her orthopedic problems could be expected to be 95% complete as of the termination date.  AR 633.  Errico agreed with the restrictions and limitations originally stated by Dr. Ellingsen, but not with Dr. Ellingsen's later, more restrictive limitations.  The medical evidence, according to Dr. Errico, does not support the finding that Stutler can lift no more than 20 pounds due to pain in her thumbs and wrists.  AR 633.

Dr. St. Clair found, after her review, that there was no support for any loss of functional ability as of January 23, 2007.  AR 634.  She found that although Dr. Margolies identified tender points which are useful in the diagnosis of fibromyalgia, there were other reasons for Stutler's aches and pains, including her medication's side effects and her lack of restful sleep.  AR 632.  St. Clair also noted that the plaintiff's experiences with bladder cancer and breast cancer did not result in any functional restrictions or limitations.  AR 634.  She said that Dr. Margolies's findings did not address Stutler's functional abilities or activity tolerance, and that Dr. Debbie Fibel's findings indicated that Stutler's complaints were entirely subjective and did not support her loss of functional abilities.  AR 634.  Dr. St. Clair concluded that no non-orthopedic restrictions or limitations were supported by the

7

data.  AR 635.

The file was also reviewed by Dr. Peter Brown, a psychiatrist and Unum

Senior Medical Consultant.  He noted that the records did not contain a psychiatric

history or mental status examination, and that there was no referral to a behavioral

health specialist.  AR 677.  Dr. Brown concluded that the available information was

not sufficient to support an appropriate diagnosis or establish any restrictions or

limitations from a psychiatric condition.  AR 678.

*F.  FCE and Additional Reviews*

An FCE was performed on July 5, 2007, by Angie Henning, a physical

therapist at Bluegrass Physical Therapy.  Henning concluded that Stutler was

capable of sustaining work at the sedentary level[1] for an eight-hour day, forty hours

per week.  AR 734.

Drs. Errico and St. Clair reviewed the findings from the FCE and found that it

appropriately measured the areas of concern for Stutler and correlated with the

clinical findings.  AR 768.[2]  Errico stated that the evaluation indicated that the

--------------------------------------

[1] The FCE report states the following explanation for the sedentary range:
"Exerting up to 10 pounds of force occasionally (Occasionally: activity or condition
exist up to 1/3 or [sic] the time) and/or a negligible amount of force frequently
(Frequently: activity or condition exist from 1/3 to 2/3 or [sic] the time) to lift,
carry, push, pull, or otherwise move objects, including the human body.  Sedentary
work involves sitting most of the time, but may involve walking or standing for
brief periods of time.  Jobs are sedentary if walking and standing are required only
occasionally and all other sedentary criteria are met."  AR 734.

[2] Drs. Errico and St. Clair each reviewed the FCE results for an hour, at a
cost to Unum of $677.00.  AR 810.

8

claimant's work ability falls within the sedentary range.  The doctors referred to the various limitations which were revealed during the testing.  AR 768-69.[3]  As part of his review of the FCE results, Dr. Errico supported restrictions and limitations for Stutler that allowed her to perform a sedentary job with no periods of standing, but short periods of walking.  Additionally, Dr. St. Clair found, based upon the FCE results, that Stutler had the ability to work full-time in sedentary work.  AR 770.

On August 6, 2007, an additional vocational review was performed by G. Shannon O'Kelley, a Unum Senior Vocational Rehabilitation Consultant, taking into account the FCE findings and the opinions of Drs. Errico and St. Clair.  Mr. O'Kelley found that the occupation of personnel manager remained a viable option for the claimant, and that she could also perform the occupations of material control manager and employee services manager.  AR 787-88.

---

[3] Dr. Errico stated that "the limitations of lifting floor to waist of 7 pounds, waist to eye level of 7 pounds, two-handed carrying of 2 pounds, one-handed carrying of 1 pound, pushing of 16 pounds, and pulling of 15 pounds were all noted and measured.  Also, sitting frequently with periods of being able to stand and walk were possible and it was noted that the claimant would be unable to stand for any period of time, work with the arms over the head, or work in a bent over, stooping position.  Climbing stairs was also to be avoided.  Claimant was also found to be unable to perform manual dexterity tasks."  AR 768-69.  Dr. St. Clair stated that "[m]any of the limitations noted in this evaluation are related to the long history of bilateral knee conditions and surgeries, including bilateral knee replacements. . . . She demonstrated significant decrease in abilities in the areas of dynamic strength, position tolerance and mobility.  She has decreased muscle strength in both the upper and lower extremities and has overall de-conditioning.  There are limitations in her range of motion at the shoulders, knees, thumbs, lumbar and cervical spine.  She fatigues easily, which may be related to her overall medical condition and de-conditioning."  AR 769.

G. *Appeal Decision*

On August 9, 2007, Ms. Stutler was informed that the decision to deny her further LTD benefits was affirmed through the administrative appellate review process.  Unum informed Ms. Stutler that "[b]ased on the totality of information in the file, it appears you have restrictions and limitations due to your orthopedic condition.  However, the supported restrictions and limitations would not prevent you from performing the duties of a gainful occupation based on your training, education and experience."  AR 799.

The plaintiff moves to reverse Unum's administrative decision terminating her LTD benefits.

**II.     Standard of Review**

This action is a suit to recover LTD benefits.  The plaintiff's LTD policy is governed by the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001, *et seq.*  Under ERISA, a district court analyzes the decision of the Plan administrator under either a "de novo" or an "arbitrary and capricious" review standard, depending on whether the Plan grants the administrator discretionary authority.  *Sanford v. Harvard Indus., Inc.,* 262 F.3d 590, 595 (6th Cir. 2001); *see also Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989).  The plaintiff concedes that the Plan provides for the application of the "arbitrary and capricious" standard of review in this case.

"[T]he arbitrary and capricious standard is the least demanding form of

10

judicial review of administrative action.  When applying the arbitrary and capricious standard, the Court must decide whether the plan administrator's decision was 'rational in light of the plan's provisions.'"  *Williams v. Int'l Paper Co.*, 227 F.3d 706, 712 (6th Cir. 2000) (citing *Davis v. Ky. Fin. Cos. Ret. Plan*, 887 F.2d 689, 693 (6th Cir. 1989); quoting *Daniel v. Eaton Corp.*, 839 F.2d 263, 267 (6th Cir. 1988)).  The court's review is confined to the administrative record as it existed on August 9, 2007, when Unum issued its final decision upholding the denial of Stutler's LTD benefits.  *Wilkins v. Baptist Healthcare Sys., Inc.*, 150 F.3d 609, 615 (6th Cir. 1998).[4]  If the administrative record thus limited can support a "reasoned explanation" for Unum's decision, then the decision is not arbitrary or capricious. *Williams*, 227 F.3d at 712.

Nevertheless, merely because the court's review must be deferential does not mean that it is inconsequential.  Federal courts do not merely "rubber stamp"

---

[4] The plaintiff argues that the court's review is not so limited and that it should consider a letter from Dr. Debbie Fibel that was sent to the administrator on August 31, 2007.  However, the case cited by the plaintiff for the contention that the record includes all documents submitted to the administrator prior to filing a lawsuit, also makes it clear that those documents must be submitted "to the administrator in a manner that gives the administrator a fair opportunity to consider it."  *Vega v. National Life Ins. Servs., Inc.*, 188 F.3d 287, 300 (5th Cir. 1999) ("If the claimant submits additional information to the administrator . . . and requests the administrator to reconsider his decision, that additional information should be treated as part of the administrative record.").  In this case the administrator received the letter from Dr. Fibel and then informed the claimant that the letter was not considered a re-appeal and that if she was intending to re-appeal then she needed to send a letter.  AR 815.  Thus, the administrator was not given a fair opportunity to consider this additional evidence and the court will not consider it in reviewing the administrator's final decision.

the administrator's decision. *Jones v. Metro. Life Ins. Co.*, 385 F.3d 654, 661 (6th

Cir. 2004) (citing *McDonald v. Western-Southern Life Ins. Co.*, 347 F.3d 161, 172

(6th Cir. 2003)). "'Deferential review is not no review,' and 'deference need not be

abject.'" *McDonald*, 347 F.3d at 172 (citing *Hess v. Hartford Life & Accident Ins.

Co.*, 274 F.3d 456, 461 (7th Cir. 2001)).

### III. Legal Analysis

The plaintiff argues that Unum wrongly terminated her benefits. She claims

she is entitled to continued LTD benefits based on her disabling conditions,

including bilateral total knee replacement with history of other surgeries,

fibromyalgia, anxiety/depression, effects of breast and bladder cancer, carpal tunnel

syndrome, medication, and weak hands and wrists. The court considers whether

Unum's decision to deny benefits was arbitrary and capricious, and one of the

factors is whether the administrator had a conflict of interest.

### A. Conflict of Interest

The plaintiff alleges that since Unum both funded the Plan and made

decisions on whether to grant benefits, it faced an impermissible conflict of

interest. A conflict of interest exists when the entity that administers an ERISA

plan, such as an employer or insurance company, (1) determines whether an

employee is eligible for benefits under the plan, and (2) pays those benefits out of

its own funds. *Metro. Life Ins. Co. v. Glenn*, 128 S. Ct. 2343, 2346 (2008).

Furthermore, "a reviewing court should consider that conflict as a factor in

12

determining whether the plan administrator has abused its discretion in denying benefits; and . . . the significance of the factor will depend upon the circumstances of the particular case." *Id.* Thus, the court finds that Unum had a conflict of interest in making its decision regarding Stutler's benefits, but that is only one factor to consider in deciding whether Unum's decision was arbitrary and capricious.

The plaintiff states that Unum's benefits denial was based on the conclusions of physicians, physical therapists, clinical reviewers, and vocational consultants, who were all paid by Unum. Additionally, Stutler's claim presented a large potential payout, which adds to Unum's conflict of interest. The plaintiff states that her benefits were payable under the Plan until March 2012, which meant that Unum's decision affected over five years of payments to a fairly high wage-earner. The plaintiff alleges that these factors contributed to a "potential for self-interested decision-making" by Unum. *See Calvert v. Firstar Finance, Inc.*, 409 F.3d 286, 292 (6th Cir. 2005) (finding that insurer's selection and payment of reviewers, and the large expense of continued payments, contributed to a conflict of interest). However, the plaintiff has not presented evidence that these aspects played any role in Unum's decision-making. *See Glenn*, 128 S. Ct. at 2348-50 (finding that a conflict of interest is a more important factor "where circumstances suggest a higher likelihood that it affected the benefits decision"). These factors present a conflict of interest on Unum's part, but they are not factors that are

13

especially egregious – it is common and accepted for the administrator to pay for consultations and examinations, and there is no indication that the claim's size was a substantive factor in Unum's decision-making.

### B. Denial of Benefits

The plaintiff argues that Unum's decision to terminate her LTD benefits was arbitrary and capricious. Unum argues that the denial of continued benefits to Ms. Stutler was based upon substantial evidence, including independent file reviews and an FCE. The court has

> an obligation under ERISA to review the administrative record in order to determine whether the plan administrator acted arbitrarily and capriciously in making ERISA benefits determinations. This obligation inherently includes some review of the quality and quantity of the medical evidence and the opinions on both sides of the issues. Otherwise, courts would be rendered to nothing more than rubber stamps for any plan administrator's decision as long as the plan was able to find a single piece of evidence – no matter how obscure or untrustworthy – to support a denial of a claim for ERISA benefits.

*McDonald*, 347 F.3d at 172 (citing *Hackett v. Xerox Corp. Long-Term Disability Income Plan*, 315 F.3d 771, 774-75 (7th Cir. 2003)). The court has reviewed and considered the record as part of its review of Unum's decision to deny benefits.

The plaintiff argues that Unum relied almost exclusively upon reports that it paid to have completed, and ignored the medical findings in the record that overwhelmingly found her disabled and incapable of working. There is nothing "inherently objectionable about a file review by a qualified physician in the context of a benefits determination." *Calvert v. Firstar Finance, Inc.*, 409 F.3d 286, 296

14

(6th Cir. 2005).

> Generally, when a plan administrator chooses to rely upon the medical
> opinion of one doctor over that of another in determining whether a
> claimant is entitled to ERISA benefits, the plan administrator's decision
> cannot be said to have been arbitrary and capricious because it would
> be possible to offer a reasoned explanation, based upon the evidence,
> for the plan administrator's decision.

*McDonald v. Western-Southern Life Ins. Co.*, 347 F.3d 161, 169 (6th Cir. 2003)

(citing cases).  The defendant relied upon multiple file reviews and vocational

assessments in addition to the FCE, all of which concluded that the claimant could

perform work or stated limitations that did not restrict her from working at the

sedentary level.

The plaintiff argues that her physicians consider her to be completely

disabled.  However, the statements of her physicians, as outlined in the background

section above, are not so direct or determinative.  Although Dr. Ellingsen's final

assessment states that Stutler cannot return to work, her other treating doctors do

not make any conclusive statements regarding her functional abilities or disability

status.  Additionally,  Ellingsen's statements prior to the termination of benefits did

not limit Stutler's capacity as extensively and were used by Unum in making its

benefits determination.  "[C]ourts have no warrant to require administrators

automatically to accord special weight to the opinions of a claimant's physician; nor

may courts impose on plan administrators a discrete burden of explanation when

they credit reliable evidence that conflicts with a treating physician's evaluation."

*Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 834 (2003).  Unum's

15

decisions cite the findings of all the claimant's physicians and it appears that their opinions were considered by Unum and by the physicians who reviewed her file for Unum. The treating physician's opinions were not ignored, but Unum chose to rely on the final conclusions of the reviewers rather than accept the last statement by Dr. Ellingsen.

  1. *Independent reviews*

The plaintiff states that each reviewer spent less than four hours reviewing her entire file. Additionally, the plaintiff argues that the file reviews were not sufficient because the doctors did not perform physical examinations even though the LTD policy allows for Unum to have the claimant examined. A plan administrator is not required to obtain the results of a physical examination before making a disability determination, even though it may be useful to do so. *Evans v. UnumProvident Corp.*, 434 F.3d 866, 877 (6th Cir. 2006). However, "the failure to conduct a physical examination – especially where the right to do so is specifically reserved in the plan – may, in some cases, raise questions about the thoroughness and accuracy of the benefits determination." *Calvert*, 409 F.3d at 295. The plaintiff claims that a physical examination by Unum's reviewers would have shown her inability to work better than the file reviews. Unum was not required to obtain a physical examination and the physicians who reviewed her file stated that they had sufficient evidence to make a determination based on that review and their contact with the claimant's treating physicians.

16

The plaintiff argues that Dr. Errico's reasoning for finding that Stutler could make a full recovery from her surgery disregards factors such as her age, weight, health and long history of significant knee problems and multiple surgeries. She asserts that Errico merely took the amount of time that is frequently required for recovery from the claimant's type of surgery and then assumed that she had improved capacity by that date. However, Dr. Errico was also relying on Dr. Ellingsen's statements regarding the claimant's improvements and functional abilities.

The plaintiff states that she is affected by her previous bladder cancer because she still undergoes surveillance cystoscopies to determine whether the cancer has returned. Similarly, the plaintiff states that the treatment and followup for the medications related to breast cancer took a toll on her body. These statements are contrary to the findings of her doctors, which state that she is not currently functionally limited due to her cancer treatments.

The plaintiff argues that courts have awarded benefits based on fibromyalgia and that the defendant erred by disregarding the proof of this ailment. She contends that Dr. St. Clair did not give proper weight to the objective tests performed by Dr. Margolies and that she disregarded Stutler's complaints of diffuse body pain. However, Dr. Margolies, the plaintiff's rheumatologist, did not find that the claimant suffered from fibromyalgia, instead stating that it was "probably fibromyalgia," and that they would perform more tests. AR 427. The defendant

17

states that it is clear that Drs. Errico and St. Clair reviewed the complete medical file and the FCE, and they addressed directly the conclusions of the treating physicians with whom they consulted by telephone.  The plaintiff argues that Dr. St. Clair's review was limited by the fact that Dr. Margolies normally does not make recommendations regarding a patient's limitations and instead defers to FCE findings.  This is not determinative, considering that Unum had a document from Dr. Margolies agreeing with Dr. Ellingsen's limitations.  Additionally, the FCE that was performed later found that the claimant could perform sedentary work, and Dr. Margolies would have adopted those findings according to his normal practices.

   *2.  FCE*

   The plaintiff states that although the FCE conducted by Bluegrass Physical Therapy concluded that she could work at a sedentary level, the evaluation contained findings about her physical condition that are contradictory to the ability to perform sedentary work.  The plaintiff argues that "Unum's reliance on the faulty conclusion of the FCE without addressing the test's contents is unreasonable."  R. 11, at 22.  The evaluation references the subjective pain statements made by Stutler during the test, including:

> That hurts my knees.  My left hip is hurting/burning/ My thighs are sore.  Now my thumbs are hurting.  My wrist is hurting also.  That makes my whole left arm and my left clavicle hurt.  The bottom of my feet are hurting.  My right shin is hurting.  The inside of my right knee is hurting.  The left knee is staying the same.  My hands are tingling a little bit.

AR 735.  The examiner noted that "[t]hese pain statements were consistent with

18

the observed movement patterns." *Id.*  The plaintiff argues that the results of the

test show her inability to lift and carry, and that those results do not correlate with

sedentary work.  The plaintiff cites numerous test results and pain scores and then

concludes that it is unreasonable to assume that she can perform sedentary work.

However, multiple reviewers, including doctors, looked at the same test results and

concluded that Stutler was able to perform sedentary work.  Unum may, under the

law, credit the findings of the doctors who reviewed Stutler's file and test results

to reach conclusions regarding her limitations.

The plaintiff asserts that the FCE revealed consistently high pain scores that

were ignored by the reviewing physicians and instead should have been addressed

by a physician, including through an examination of the claimant.  The defendant

argues that the plaintiff takes parts of the FCE report out of context to support her

argument that the conclusions of the FCE report were unreliable.  The plaintiff

points out that the FCE report stated that she "could never stand."  However, the

report goes on to explain that a "never" score for standing ability "does not mean

that the client literally can never stand.  The client may be able to stand for brief

periods but is not able to sustain this for up to 1/3 of the day."  AR 738.  The

plaintiff states that the FCE lasted only one day for approximately three-and-a-half

hours even though David Frank had previously recommended a two-day test.  The

test did take place in the afternoon, between 2:00 p.m. and 6:00 p.m., as

recommended by Mr. Frank.  AR 592, 734.  The FCE results were reviewed by

19

physicians, who found that the evaluation appropriately measured the claimant's areas of concern and that she had the ability to perform sedentary work activities based on the results of the FCE.  AR 768-70.

The plaintiff argues that the evaluations performed following the FCE were based on the inaccurate FCE and did not take into account Stutler's constant pain. Specifically, the plaintiff states that Dr. Errico, although agreeing that the lower-extremity restrictions in the FCE were reasonable, found that the upper-extremity restrictions were not supported by medical evidence. AR 769-70.  Dr. Errico found that there was no substantiating medical evidence for the FCE's upper-extremity findings.  AR 770.

Unum had a reasonable basis for determining that Stutler had the functional capacity to perform certain occupations.  The court finds that Unum offered a reasoned explanation for its decision based upon substantial evidence that Stutler has the ability to perform sedentary work.

**IV. Conclusion**

Accordingly,

**IT IS ORDERED** that the plaintiff's motion to reverse the administrative decision (R. 11) is **DENIED**.

**IT IS FURTHER ORDERED** that Unum Life Insurance Company's denial of additional long-term disability benefits to the plaintiff is **AFFIRMED**.

20

Signed on  March 16, 2009

JENNIFER B. COFFMAN, CHIEF JUDGE
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY